CONSTANCE J. YU (State Bar No. 182704)
E-Mail:     cyu@sideman.com
RYAN J. MECKFESSEL (State Bar No. 215952)
E-Mail:     rmeckfessel@sideman.com
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Eighth Floor
San Francisco, California 94111-3629
Telephone:    (415) 392-1960
Facsimile:    (415) 392-0827

Attorneys for Plaintiff
CENTRAL PAYMENT CO., LLC

ORIGINAL FILED

APR - 8 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

CV 08

WHA

CENTRAL PAYMENT CO., LLC,

    Plaintiff,

    v.

JARED HACKLER, an Individual, ACCESS
FLEET, INC., a Nevada Corporation,
ANDREW HACKLER, an Individual,

    Defendants.

CASE NO.

**COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR BREACH
OF CONTRACT, BREACH OF IMPLIED
COVENANT OF GOOD FAITH AND
FAIR DEALING, MISAPPROPRIATION
OF TRADE SECRETS, UNFAIR
COMPETITION, CONVERSION AND
TORTIOUS INTERFERENCE WITH
CONTRACT**

    Plaintiff CENTRAL PAYMENT CO., LLC ("CPC") brings the following Complaint for

Injunctive Relief and for Damages, stating and alleging as follows:

### I.     PARTIES, JURISDICTION AND VENUE

    1.    CPC is a California LLC with its principal place of business in Larkspur,

California. CPC does business in various locations within the United States.

    2.    CPC is the successor and assign of the contractual rights and obligations of Central

Payment Corporation, formerly a California Corporation which was converted into CPC. CPC has

and continues to do business under the moniker of Central Payment Corporation.

/ / /

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1

Case No.

3.     CPC is engaged in the business of facilitating both traditional and e-commerce sales transactions between businesses and their customers.  CPC services its clients by, among other things, providing payment processing products, point-of-sale (POS) products (i.e., check reader terminals, ATM & debit cards, credit card payments), wireless payments, merchant banking products, and cash advance services to its clients nationwide.

4.     Defendant Jared Hackler ("J. Hackler") was an employee of CPC from May 2006 until March 2007.  On information and belief, Defendant J. Hackler is a citizen of Nevada and currently resides in Minden, Nevada.

5.     Defendant Access Fleet, Inc. ("Fleet") is a Nevada corporation with its principal place of business in Gardnerville, Nevada.  On information and belief, Defendant Fleet was incorporated on or about March 23, 2007.

6.     Defendant Andrew Hackler ("A. Hackler") is the father of Defendant J. Hackler.  On information and belief, Defendant A. Hackler is a citizen of Nevada and currently resides in Nevada.

7.     On information and belief, Defendant A. Hackler is, and at all times pertinent hereto was, an officer and director of Defendant Fleet.  On information and belief, Defendant J. Hackler is, and at all times pertinent hereto was, an officer and director of Defendant Fleet.

8.     The jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     Venue is proper in this court under 28 U.S.C. § 1391 as the conduct upon which this complaint is based occurred in this judicial district.

## II.     FACTUAL BACKGROUND

10.     CPC is a premier national payment processing services company.  CPC enables businesses to accept Visa, MasterCard, American Express, Discover and other non-cash payments through low cost processing platforms.  CPC is a registered Merchant Service Provider though Wells Fargo Bank.

///

Case No.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

11.     Over the last several years, CPC has spent in excess of four million dollars in building a proprietary model for payment processing and volume sales transactions and maintaining its highly competitive market share of the large-scale payment processing.  During that same time, CPC has developed a state of the art marketing engine that is unique in the credit card processing business.

12.     In or about April 2006, Defendant A. Hackler contacted one of CPC's principals, Matthew Hyman ("Hyman"), to ask whether CPC could hire his son, Defendant J. Hackler. Defendant A. Hackler and Hyman were acquainted with one another because they previously worked together as professional colleagues.  CPC agreed to give Defendant J. Hackler a full time job as a Sales Director.  Defendant J. Hackler began working at CPC on May 8, 2006.

13.     As a condition of Defendant J. Hackler's employment, J. Hackler expressly acknowledged the terms of and conditions of employment as set forth in CPC's employee handbook.  Defendant J. Hackler executed the acknowledgment of receipt of the employee handbook at the onset of his employment with CPC.

14.     Thereafter, on or about September 18, 2006, Defendant J. Hackler executed a new acknowledgment of receipt of CPC's employee handbook.  At that time Defendant J. Hackler also executed an Employee Non-Solicitation Agreement, which confirms that the terms and conditions of employment include J. Hackler's agreement to maintain CPC's proprietary and confidential information in confidence, and to not solicit CPC's clients, customers or employees.  In executing the Employee Non-Solicitation Agreement, J. Hackler re-confirmed in writing that CPC's proprietary information was confidential, and expressly agreed to not disclose or use for personal gain any of CPC's confidential or proprietary information.

> Employer will or may grant Employee access to Employer's confidential and proprietary information, which may include but is not limited to:  customer lists, pricing lists, trade secrets, business forecasts and other proprietary information.

* * *

> **CONFIDENTIALITY:**  Employee acknowledges that Employer shall or may, in reliance upon this Agreement, grant Employee access to Employer's confidential and proprietary information. Employee agrees to not disclose to any other person (unless required

3

Case No.

by law) or use for personal gain any such confidential or proprietary
information at any time during or after the termination of
employment, unless Employer grants express, written consent of
such a disclosure.

Employee Non-Solicitation Agreement, attached hereto as Exhibit A.

15.    By executing CPC's Non-Solicitation Agreement, Defendant J. Hackler

acknowledged and agreed to comply with the policies in the Non-Solicitation Agreement.  In

addition to his agreement not to disclose or sue for personal gain CPC's confidential or proprietary

information, J. Hackler expressly agree to refrain from soliciting CPC's client, customers or

employees up to and including three years after they leave CPC's employment:

**NON-SOLICITATION OF CUSTOMERS:**  For a period of three
years following the termination of employment with Employer . . .
Employee agrees not to directly or indirectly induce, recruit or
solicit any of Employer's clients or customers…

\* \* \*

**NON-SOLICITATION OF EMPLOYEES OR ACCOUNT
EXECUTIVES/REGIONAL MANAGERS:** Employee agrees
that for a period of three years following the termination of his/her
employment with Employer, Employee will not induce, recruit or
solicit (directly or indirectly) any of the Employer's employees,
account executives or regional managers, to terminate their
employment or enter into another employment arrangement with
Employee or a third party.

Exh. A.

16.    As acknowledged by J. Hackler on executing the acknowledgments of receipt of

employee handbook and by executing the Employee Non-Solicitation Agreement, J. Hackler was

entrusted with and received access to CPC's customers, trade secrets, and confidential

information.  Also by executing the acknowledgments of receipt of employee handbook and by

executing the Employee Non-Solicitation Agreement, J. Hackler agreed not to use for personal

gain or to disclose CPC's proprietary or confidential information and not to solicit CPC's clients,

customers or employees until at least three years after the termination of his employment .

17.    Less than a year after the commencement of his employment with CPC, on March

14, 2007, Defendant J. Hackler gave notice that he was leaving CPC's employment.  Almost

immediately thereafter, on March 23, 2007, Defendant Access Fleet Inc. was formed as a Nevada

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

4

Case No.

1  corporation.  Defendant A. Hackler is listed with the Nevada Secretary of State as the President of

2  Defendant Access Fleet.  Defendant J. Hackler is listed as the Secretary of Defendant Access Fleet

3  Inc.  Both Defendants A. Hackler and J. Hackler are listed as directors of Access Fleet Inc. with

4  the Nevada Secretary of State.

5        **Solicitation of CPC's Employees in Direct Violation of**
       **Defendant J. Hackler's Non-Solicitation Agreement with CPC**

6

7        18.    After resigning, Defendant J. Hackler immediately started a similar business in

8  Nevada, and attempted to solicit CPC employees from CPC.  The Non-Solicitation Agreement

9  expressly prohibits solicitation of other CPC employees by departed employees for a period of

10  three years after departure from CPC (Exh. A).

11        19.    On February 8, 2007, Defendant J. Hackler approached Austin Mac Nab

12  ("Mac Nab"), CPC's Executive Sales Director, to consider leaving CPC and starting a competing

13  business as a partner with Defendant J. Hackler and Defendant J. Hackler's father, Defendant

14  A. Hackler.  On February 24, 2007, Defendant J. Hackler invited Mac Nab to meet Defendant

15  A. Hackler.  During that meeting and in subsequent telephone conversations over the course of

16  several weeks, Defendant J. Hackler extended an offer to Mac Nab to work for Defendant Fleet.

17  Mac Nab considered the position and, at Defendant Fleet's request, over the next several weeks

18  obtained domain names for websites to be affiliated with Defendant Fleet.

19        20.    During the February 2007 meetings involving Mac Nab, Defendant J. Hackler and

20  Defendant A. Hackler, Defendant A. Hackler asked Mac Nab whether Mac Nab had signed any

21  contracts with CPC, and the substance of those contracts.  Tellingly, and evidencing A. Hackler's

22  specific knowledge of the terms of Defendant J. Hackler's employment agreement with CPC,

23  Defendant A. Hackler made repeated statements to Mac Nab that the non-solicitation or any other

24  contractual agreements between CPC and J. Hackler were unenforceable and would not hold up in

25  court, and that he, A. Hackler, was sure that the employment agreements between CPC and

26  Mac Nab were similarly unenforceable.

27        21.    On or about March 15, 2007, Mac Nab discussed with Hyman of CPC that

28  Mac Nab was considering taking a position with Defendant Fleet.  Ultimately, CPC negotiated a

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  retroactive retention bonus for the executive sales director, Mac Nab, at a significant financial cost

2  to CPC.

3          22.    When Mac Nab advised Defendant Fleet that he would be remaining at CPC,

4  Defendant Fleet paid him to acquire the domain names that Mac Nab had formed and registered.

5          23.    In or about early March 2008, Defendant J. Hackler attempted to solicit another

6  CPC employee, Randy Vanderpool ("Vanderpool"), an account executive with CPC. On or about

7  March 8, 2008, Defendants, on information and belief at the direction of Defendant J. Hackler,

8  flew Vanderpool to Reno Nevada to visit Defendants. While in Reno, Defendant J. Hackler

9  offered Vanderpool a position with Fleet in an attempt to induce Vanderpool to terminate his

10  position as an account executive with CPC and join Fleet.

11          24.    Again, CPC ultimately negotiated a retroactive retention bonus to incentivize

12  Vanderpool to stay with CPC, at a significant financial cost to CPC.

13          25.    CPC is presently unaware whether Fleet has solicited and induced other CPC

14  employees to terminate employment with CPC and join Fleet. CPC has incurred damages in

15  excess of $1,000,000 incurred to retain CPC employees who were known to have been solicited by

16  Defendant J. Hackler in his attempts to induce those employees to leave CPC and join Fleet.

17          **Defendant J. Hackler's Use of CPC's Confidential Information**
       **for Personal Gain to Form Defendant Fleet, a Competing Business**

18

19          26.    During the course of his discussions with Defendant Fleet, CPC's Executive Sales

20  Director Mac Nab learned about Fleet's business. Given CPC's unique business model and the

21  relatively short period of time between Defendant J. Hackler's departure from CPC and the

22  formation of Fleet, Mac Nab concluded that Fleet was operated as an exact replica of CPC. In

23  Mac Nab's discussions with Fleet's President in or about February 2007, Defendant A. Hackler

24  referred to his son's employment at CPC as: "Jared was basically there to go to college."

25          27.    In comparing the text of Fleet's webpages against CPC's webpages, CPC can

26  deduce that significant materials from CPC were misappropriated by Defendants to develop a

27  similar if not exact replica of CPC's business model. By way of example and not limitation,

28  significant portions of text of Fleet's past and/or present webpages is identical to the text on

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

6                                               Case No.

1  CPC's website.  Specifically, Fleet's webpage did and/or does utilize the following language in its

2  recruitment materials:

3           Access Fleet is looking for independent account executives
          to generate quality business.
4                            * * *
           Access Fleet offers a very aggressive compensation
5         program, which pays both immediate commissions and long term
          residuals! No experience needed!
6          Access Fleet provides comprehensive training that will give
          you the tools you need to sell.
7          If you are interested in a career with Access Fleet, please
          call (866) 796-7297 today!
8          You may also fax us your resume at (775) 783-7401!

9       28.    This recruitment language is identical to and taken verbatim from the language

10  found on CPC's webpages recruitment information.  Similarly, Fleet had further excerpts on its

11  webpages that are identical to CPC's webpages, and which, on information and belief, were

12  copied verbatim from CPC's webpages by Fleet's agents for use by Fleet on their own webpages.

13  For example, Fleet has posted the following language that is identical to the language on CPC's

14  webpages:  "Debit Cards:  Debit card use is sky rocketing as more customers are discovering their

15  convenience and more merchants are discovering the potential savings over payment alternative

16  payment methods."

17      29.    CPC is informed and believes that J. Hackler misappropriated other documents,

18  lists, contacts and confidential information in various forms, including Training Manuals and

19  CPC's confidential pricing information, and converted such documents and information for his

20  own personal benefit and for use by Fleet in Fleet's conversion of CPC's trade secrets and

21  proprietary and confidential information and business model.

22      30.    CPC is informed and believes that all Defendants were acting in concert with and

23  were the co-conspirators and/or aiders and abettors of each other and of the other named

24  Defendants, and all of them. At all relevant times when Defendants were not acting as the agent of

25  each other, the acts of Defendants, and each of them, were later ratified by each other Defendant

26  as the act of that Defendant.

27

28

7                                    Case No.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

# FIRST CAUSE OF ACTION

## (Breach of Contract Against Defendant J. Hackler)

31.     CPC realleges, and incorporates herein by this reference, the preceding allegations.

32.     As a necessary condition of his employment with CPC, J. Hackler executed and agreed to the terms of CPC's Employee Non-Solicitation Agreement, as detailed herein, and acknowledged the terms included in CPC's Employee Handbook, as detailed herein.

33.     By virtue of his employment at CPC, J. Hackler gained access to the books and records of CPC, the confidential information contained therein, and the identity of CPC customers whose accounts he serviced.

34.     As a result of the foregoing, Defendants specifically acquired information and records that revealed the names and addresses and confidential information of numerous CPC accounts.

35.     J. Hacker has violated, and continues to violate, his agreements and the Employee Handbook in the manner described above.

36.     As a direct and proximate result of J. Hackler's breach of his agreements, CPC has suffered damages as described herein.

37.     Defendant J. Hackler resigned from CPC on March 14, 2007, and formed a competing company, Access Fleet, Inc.  While Defendant J. Hackler was still in the employ of CPC, CPC is informed and believes and thereon alleges, Defendants conspired together to wrongfully convert CPC proprietary methods and training manuals for Defendant Fleet in flagrant violation of J. Hackler's express agreements and contractual obligations with CPC, and in violation of California law.

38.     Defendant J. Hackler's conduct was and is in furtherance of a scheme to obtain and convert to his personal use and gain the records of CPC, the property of CPC, the names and addresses and other customer information and records used to conduct business at CPC, the client lists and contacts of CPC, the trade secrets of CPC, confidential information of CPC, CPC's procedures and systems, CPC's marketing and promotional techniques, and the goodwill generated, directly and indirectly, by their association with CPC, all in breach of the Employee

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

8

Case No.

1 Non-Solicitation Agreement, the express agreement and contractual obligations owed by

2 Defendant J. Hackler to CPC, and in violation of California law.

3       39.     The continued misappropriation and disclosure of CPC's trade secrets and

4 confidential information, and solicitation of CPC's employees and agents by Defendants will

5 cause great and irreparable injury to CPC in that such conduct will result in the diversion from

6 CPC of substantial amounts of business. The damages that have already been sustained are in

7 excess of $1,000,000. Damages are continuing to accrue and the actual amount of total damages

8 is significantly in excess of the jurisdictional minimum amount of $75,000.

9 ### SECOND CAUSE OF ACTION

10 **(Breach of Implied Covenant of Good Faith and Fair Dealing Against Defendant J. Hackler)**

11       40.     CPC realleges and incorporates herein by this reference, the preceding allegations.

12       41.     By virtue of the agreements between Defendant J. Hackler and CPC, as described

13 herein, J. Hackler was bound by the implied covenant of good faith and fair dealing to refrain from

14 acts which would render performance of the contract impossible, to fail to perform all duties that

15 the agreements presuppose that each party will do to accomplish the purposes of those agreements,

16 and to refrain from acts which would usurp the benefits of the agreement that were intended to and

17 would otherwise accrue to the benefit of CPC.

18       42.     Defendant J. Hackler, by the acts alleged herein, breached the covenant of good

19 faith and fair dealing implied with the agreements between CPC and Defendant J. Hackler

20 described herein. Defendant J. Hackler breached the implied covenant of good faith and fair

21 dealing by, *inter alia*, proceeding to solicit at least one CPC employee, Mac Nab, immediately

22 before J. Hackler resigned from CPC on March 14, 2007, and thereafter.

23       43.     As a direct and proximate result of J. Hackler's breach of his duties of good faith

24 and fair dealing to CPC, CPC has suffered damages as described herein in excess of $1,000,000,

25 and in excess of the jurisdictional minimum amount of $75,000.

26 ### THIRD CAUSE OF ACTION

27 **(Misappropriation of Trade Secrets Against All Defendants)**

28       44.     CPC realleges and incorporates herein by this reference, the preceding allegations.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

9

Case No.

45.    CPC dedicates substantial personnel and capital resources and a significant percentage of its overall budget to the acquisition, development, servicing, and growth of its client list and client specific payment processing strategies.  These expenses include the cost of advertising, promotion, and marketing nationwide; extensive training of its sales force; intensive product research; substantial costs incurred by maintaining sales support, quotation and other electronic equipment and operational support; the costs of sponsoring sales presentations; and, costs associated with CPC's unique business operations.

46.    Furthermore, CPC devotes substantial resources to compiling that information in files and computer data banks.  Through these extensive efforts, CPC acquires and continuously updates a variety of types of highly confidential information (the "Confidential Information") concerning its business model, among other things:  the names, addresses, and telephone numbers of clients and/or their representatives; sensitive financial information, pricing strategies and other non-public payment processing techniques.

47.    The above-referenced Confidential Information is neither commonly known nor easily discoverable by CPC's competitors.  CPC is only able to develop and acquire the Confidential Information through great time, effort, and expense, and as a consequence of the trust and confidence that its customers have come to repose in CPC.  Hence, the Confidential Information gives CPC a significant and valuable competitive advantage its marketplace.  CPC's Confidential Information appears in no directly or other publicly available source.

48.    CPC expends great effort and expense to preserve the strict confidentiality of its Trade Secrets and to prevent any unauthorized disclosure thereof.  Among other things, CPC restricts access to Trade Secret information only to employees on a need-to-know basis, maintains computer data embodying or relating to Trade Secrets in restricted computer files accessible only by use of secret passwords, avoids unauthorized access to its data bases by means of sophisticated electronic and computer software security devices, and requires each of its employees to sign, as a condition of their employment, agreements whereby each, employee expressly agrees that all CPC records are the proprietary and confidential information of CPC, and expressly covenants, *inter alia*, not to divulge, disclose, or remove any such information, and not to solicit CPC's customers,

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

10

Case No.

1  employees or account managers for a three-year period of time following their termination of

2  employment from CPC, for any reason.

3          49.    Defendant J. Hacker was a trusted employee of CPC from May 8, 2006, until

4  March 14, 2007, when he suddenly resigned employment.  In his capacity as Sales Director,

5  Defendant J. Hackler had access to and became familiar with CPC's Trade Secrets and personally

6  and regularly communicated with many of CPC's clients and became acquainted with CPC's key

7  employees.

8          50.    CPC is informed and believes, and thereon alleges, that beginning in or before

9  March 2007, Defendant J. Hackler and Fleet misappropriated some or all of the Trade Secrets of

10  CPC by acquiring by improper means and without the consent or authorization of CPC, the above-

11  referenced Confidential and Trade Secret information and data, in original, copied, and/or

12  computerized form. Thereafter, Defendant J. Hackler disclosed said Trade Secrets to officers of

13  his newly-formed company, a competitor of CPC, and Defendants used said Trade Secrets,

14  without the consent or authorization of CPC to solicit clients and employees from CPC to Fleet.

15  While still employed by CPC, and continuing thereafter, CPC is informed and believes and

16  thereon alleges that Defendant prepared to engage in, began to engage in, and continues to engage

17  in, *inter alia*, the following acts [all for the purpose of personal financial gain]:

18          (a)    removal of original and/or copies of CPC documents and/or conversion for

19  personal use of confidential CPC business records and information;

20          (b)    soliciting and/or preparing to solicit CPC's employees to terminate their

21  relationship with CPC and to work for Defendant Fleet.

22          51.    The continued misappropriation, disclosure and use of CPC's trade secrets and

23  confidential information by Defendants has caused and will continue to cause significant damages

24  to CPC.

25                          **FOURTH CAUSE OF ACTION**

26  **(Unfair Competition [Cal. Bus. & Prof. Code § 17200, *et seq.*] Against All Defendants)**

27          52.    CPC realleges, and incorporates herein by this reference, the preceding allegations.

28

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

11

Case No.

53.    Defendants' wrongful acts and conduct as alleged herein, including, among other things, their misappropriation and misuse of CPC's Trade Secrets, intentional breach by Defendant J. Hackler of various agreements with CPC (and Defendant Fleet's inducing Defendant J. Hackler to breach his non-solicitation contract with CDC), misappropriation of CPC's corporate opportunities and solicitation of CPC customers and employees, constitute unfair and unlawful competition.

54.    Said unfair competition by Defendants has caused and continue to cause substantial damage to CPC. Given the nature of the violations, damages are continuing to accrue and the final amount is not presently calculable but will be significantly in excess of the jurisdictional minimum amount of $75,000.

55.    Defendants knowingly interfered with CPC's advantageous existing or prospective contractual and economic relationships, so as to misappropriate to their personal advantage CPC's Trade Secrets, other confidential, proprietary information or corporate opportunities; or to divert CPC's employees to Defendant Fleet.

56.    Following his resignation from employment with CPC, Defendant J. Hackler continued to owe a duty to CPC to refrain from any act, or omission to act, calculated or likely to disclose to third parties CPC's Trade Secrets or other proprietary, confidential information acquired during the course of his employment by CPC, or to misappropriate to his personal advantage, or utilize in competition with CPC, such Trade Secrets, other proprietary information, any other property belonging to CPC, or any corporate opportunities of CPC, or to divert CPC's customers and employees.

57.    Defendants intentionally and knowingly breached or caused Defendant J. Hackler to breach the Non-Solicitation Agreement with CDC by, among other things, secretly and surreptitiously preparing, while in CPC's employ, to commence active, unfair competition with CPC following Hackler's resignation from such employment, and by commencing competitive activities either prior to or subsequent to resignation from his employment with CPC by means of the unauthorized and unlawful use of CPC's Trade secrets, intentional interference with CPC's existing customer relationships and prospective economic advantage and misappropriation of

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

Case No.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

CPC's corporate opportunities, by soliciting and attempting to divert CPC's customers to their new employer.

58. Said breach of fiduciary duty by Defendant has caused and will continue to cause substantial, immediate and irreparable damage to CPC. CPC is informed and believes that Defendants plan to and will continue their unfair business practices to the substantial, immediate and irreparable damage to CPC absent the issuance of an injunctive prohibiting further unlawful and unfair business practices by Defendants, or any of them, or their agents or assigns, individually or collectively.

59. Given the nature of the violations, CPC is informed and believes that Defendants have and will continue to unlawfully acquire profits and benefits directly traceable to the unlawful and unfair business practices alleged herein, which profits and benefits will be subject to restitutionary disgorgement in favor of CPC and against Defendants. Amounts subject to such restitutionary disgorgement are continuing to accrue and the final amount is not presently calculable but will be significantly in excess of the jurisdictional minimum amount of $75,000.

**FIFTH CAUSE OF ACTION**

**(Conversion Against All Defendants)**

60. CPC realleges, and incorporates herein by this reference, the preceding allegations.

61. CPC is and at all times herein mentioned was the owner of commercially-valuable property (the "Missing Property") described as follows: training manuals, pricing lists, customer names and/or addresses existing on computer databases, hard drives, or software applications which contains details regarding its clients' identity and information, and proprietary software relating to the presentation of CPC financial information to its customers.

62. CPC is and at all times herein mentioned was entitled to the immediate and exclusive possession of the Missing Property.

63. In or prior to March 2007, Defendants wrongfully and without CPC's consent took possession of the Missing Property. Since that time, Defendants have been, and now are, in wrongful possession of the Missing Property in violation of CPC's right to immediate and exclusive possession.

1    64.    At all times herein mentioned, CPC did and does maintain a valid interest in the

2    Missing Property.

3    65.    CPC is informed and believes and thereon alleges Defendants have wrongfully and

4    secretly taken the Missing Property.  CPC is informed and believes and thereon alleges

5    Defendants have converted the Missing Property to their own private use, benefit, and enjoyment,

6    in disregard of CPC's rights.

7    66.    Defendants have failed and refused, and continue to fail and refuse, to return the

8    Missing Property to CPC.

9    67.    As a proximate result of Defendants' wrongful conversion, CPC has been deprived

10    of possession and use of its Missing Property and the proceeds thereof to CPC's damage in a sum

11    as yet unascertained. CPC has been required to exert time and energy and to expend money in

12    pursuit of the converted property, all to CPC's further damage.

13    68.    In converting the Missing Property, Defendants' conduct was willful and was

14    intended to cause injury to CPC in that Defendant acted with oppression, fraud and malice in

15    taking proprietary customer information and otherwise misappropriating the Missing Property to

16    deprive CPC of substantial ongoing customer business.

17    **SIXTH CAUSE OF ACTION**

18    **(Tortious Interference with Contract Against Defendants Fleet and A. Hackler)**

19    69.    As alleged hereinabove, CPC does, and at all times pertinent hereto did, have a

20    valid enforceable contract with Defendant J. Hackler, pursuant to which Defendant J. Hackler

21    agreed, *inter alia*, "to not disclose to any other person (unless required by law) or use for personal

22    gain any such confidential or proprietary information at any time during or after the termination of

23    employment," and, "for a period of three years following the termination" of Defendant J.

24    Hackler's employment with CPC "not to directly or indirectly induce, recruit [CPC's] clients or

25    customers" and "not [to] induce, recruit or solicit (directly or indirectly) any of the [CPC's]

26    employees, account executives or regional managers, to terminate their employment or enter into

27    another employment arrangement with [Defendant J. Hackler] or a third party."

28

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

14

Case No.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1    70.    On information and belief, Defendant A. Hackler is, and at all times pertinent

2  hereto was, informed and aware of the contract between CPC and Defendant J. Hackler as set forth

3  more fully hereinabove.  Defendant A. Hackler specifically inquired with Mac Nab about

4  Mac Nab's employment agreement with CPC and told Mac Nab that CPC's Employee Non-

5  Solicitation Agreement was unenforceable.  Notwithstanding A. Hackler's knowledge of the terms

6  of CPC's employee agreements, A. Hackler was actively encouraging J. Hackler to breach the

7  Employee Non-Solicitation Agreement.

8    71.    On information and belief, Defendant Fleet is, and at all times pertinent hereto was,

9  informed and aware of the contract between CPC and Defendant J. Hackler as set forth more fully

10  hereinabove.

11    72.    On information and belief, Defendant A. Hackler intended to and did wrongfully

12  induce Defendant J. Hackler to breach the agreement between CPC and Defendant J. Hackler as

13  set forth more fully hereinabove.

14    73.    On information and belief, Defendant Fleet intended to and did wrongfully induce

15  Defendant J. Hackler to breach the agreement between CPC and Defendant J. Hackler as set forth

16  more fully hereinabove.

17    74.    Defendant A. Hackler's conduct alleged herein is, and at all times pertinent hereto

18  was, improper, wrongful, unjustified and not privileged.

19    75.    Defendant Fleet's conduct alleged herein is, and at all times pertinent hereto was,

20  improper, wrongful, unjustified and not privileged.

21    76.    In performing the conduct alleged herein, Defendant A. Hackler's  conduct was

22  willful and was intended to cause injury to CPC in that Defendant A. Hackler acted as alleged

23  hereinabove with oppression, fraud and malice.

24    77.    In performing the conduct alleged herein, Defendant Fleet's conduct was willful

25  and was intended to cause injury to CPC in that Defendant Fleet acted as alleged hereinabove with

26  oppression, fraud and malice.

27    78.    As a proximate result of Defendants A. Hackler's wrongful, unjustified, improper,

28  unprivileged and malicious tortious interference with CPC's contract with Defendant J. Hackler,

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

15                                    Case No.

1  CPC has been damaged in a sum as yet unascertained in excess of the jurisdictional minimum

2  amount of $75,000.  As a further proximate result of Defendants A. Hackler's unprivileged

3  tortious interference CPC continues to incur substantial, immediate and irreparable damages.

4        79.    As a proximate result of Defendants Fleet's wrongful, unjustified, improper,

5  unprivileged and malicious tortious interference with CPC's contract with Defendant J. Hackler,

6  CPC has been damaged in a sum as yet unascertained in excess of the jurisdictional minimum

7  amount of $75,000.  As a further proximate result of Defendants Fleet's unprivileged tortious

8  interference CPC continues to incur substantial, immediate and irreparable damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in their favor and against the Defendants as

follows:

    i.    For compensatory damages in an amount to be proven at trial;

    ii.    For interest on all sums at the legal rate;

    iii.    For injunctive relief;

    iv.    For exemplary damages under California Civil Code § 3294; and,

    v.    For such other and additional relief as this Court deems just and proper.

DATED:  April 8, 2008              Respectfully submitted,

SIDEMAN & BANCROFT LLP

By: _____
    RYAN J. MECKFESSEL
Attorneys for Plaintiff
CENTRAL PAYMENT CO., LLC

10826\586955v2

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

Case No.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

**EXHIBIT "A"**

# EMPLOYEE NON-SOLICITATION AGREEMENT

This Employee Non-Solicitation Agreement (the "Agreement") is made effective as of September 18, 2006, by and between Central Payment Corp (the "Employer") and ___Jared    Hackler_____ (the "Employee") (collectively referred to as the "Parties").

WHEREAS, Employer has offered to employ Employee; and this agreement will supersede any other agreement in place signed prior to the above date in regards to non-solicatation;

WHEREAS, Employer will or may grant Employee access to Employer's confidential and proprietary information, which may include, but is not limited to: customer lists, pricing lists, trade secrets, business forecasts and other proprietary information.

NOW THEREFORE, the Parties agree as follows:

**1. NON-SOLICITATION OF CUSTOMERS:** For a period of three years following the termination of employment with Employer for any reason, Employee agrees not to directly or indirectly induce, recruit or solicit any of Employer's clients or customers, whether potential or otherwise, with whom Employee had dealings with on behalf of Employer during his/her employment with Employer.

**2. NON-SOLICITATION OF EMPLOYEES OR ACCOUNT EXECUTIVES/REGIONAL MANAGERS:** Employee agrees that for a period of three years following the termination of his/her employment with Employer, Employee will not induce, recruit or solicit (directly or indirectly) any of the Employer's employees, account executives or regional managers, to terminate their employment or enter into another employment arrangement with Employee or a third party.

**3. CONFIDENTIALITY:** Employee acknowledges that Employer shall or may, in reliance upon this Agreement, grant Employee access to Employer's confidential and proprietary information. Employee agrees to not disclose to any other person (unless required by law) or use for personal gain any such confidential or proprietary information at any time during or after the termination of employment, unless Employer grants express, written consent of such a disclosure.

**4. CONTINUING OBLIGATIONS:** Notwithstanding the termination of Employee for any reason, Sections 1, 2 and 3 of this Agreement will continue in full force and effect following such termination.

**5. BINDING EFFECT:** The covenants and conditions contained in the Agreement shall apply to and bind the Parties and the heirs, legal representatives, successors and permitted assigns of the Parties.

**6. WAIVER:** The failure of either party to enforce any provisions of this Agreement shall not be deemed a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

**7. SEVERABILITY:** If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

**8. ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between the Parties and supersedes any prior understanding or representation of any kind preceding the date of this Agreement. There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Agreement. This Agreement may be modified in writing and must be signed by both Employee and Employer.

**9. GOVERNING LAW:** This Agreement shall be governed by and construed in accordance with the laws of the State of _____ CA _____.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first above written.

EMPLOYER:

_____
(Signature) San Huynh

_____
(Name – Please Print)

_____
(Position) HR Director

EMPLOYEE:

_____
(Signature)

_____
(Name – Please Print) Jared Hackler